UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MALIBU TEXTILES, INC.,

                            Plaintiff,

            - against -

SENTIMENTAL NY, ON TREND, INC.,
NEWYORKDRESS.COM, and DOES 1 through 10,

                            Defendants.

**OPINION AND ORDER**

14 Civ. 2576 (ER)

Ramos, D.J.:

Plaintiff Malibu Textiles, Inc. ("Malibu"), a designer of fashion textiles and lace, brings this action for copyright infringement against dress manufacturer On Trend, Inc. d/b/a Sentimental NY ("Sentimental").[1]  Before the Court are the parties' cross-motions for summary judgment.  (Docs. 43, 49).  For the following reasons, Malibu's motion is GRANTED in part and DENIED in part, and Sentimental's motion is DENIED.

## I. FACTUAL BACKGROUND

All of the following background facts are taken from the parties' Local Rule 56.1 statements of material facts and declarations.  They are undisputed unless otherwise noted.

Malibu is a New Jersey-based lace designer that commissions original lace designs and sells those proprietary designs to garment manufacturers.  Pl.'s Rule 56.1 Statement of Undisputed Material Facts ("Pl. 56.1") (Doc. 47) ¶¶ 1–3; Declaration of Richard Samuels ("Samuels Decl.") (Doc. 45) ¶ 2.  In 1998, Malibu purchased the rights to an original fabric

---

[1] Although Sentimental NY and On Trend, Inc. are separate defendants in this action, it is undisputed that they are in fact one entity and Sentimental NY does business as On Trend, Inc.  *See* Defendant's Response to Plaintiff's Statement of Undisputed Material Facts (Doc. 51) ¶ 29.

design created by a Brazilian designer ("Pattern 1717"), and has held a copyright registration in Pattern 1717 since October 20, 1998.  Pl. 56.1 ¶¶ 8–9; Samuels Decl., Ex. 3 (Pattern 1717 Certificate of Registration).[2]

Around 2002, Malibu created a new fabric design in-house ("Pattern 1967") that was derived from Pattern 1717 and employs a similar floral pattern.  Pattern 1967, the fabric design at issue in this case, was developed and formatted by Malibu specifically for use on lace fabric. *See* Pl. 56.1 ¶¶ 12–15; Samuels Decl., Ex. 4 (pictures of Pattern 1967 sample).  Malibu applied for and, on August 26, 2002, received a copyright registration in Pattern 1967, and has held such registration since that time.  Pl. 56.1 ¶¶ 16–18; Samuels Decl., Ex. 5 (Pattern 1967 Certificate of Registration).  Since 2002, Malibu has distributed over 900,000 yards of fabric bearing Pattern 1967 to customers nationwide.  Pl. 56.1 ¶¶ 19–20; Samuels Decl. ¶ 12.

Sentimental purchases fabric designs from other companies and assembles dresses and other garments, which are then sold by Sentimental to retailers.  Def.'s Statement of Undisputed Material Facts ("Def. 56.1") (Doc. 56) ¶ 13; Affidavit of Bassam Hourani ("Hourani Aff.") (Doc. 50) ¶ 11 (attesting that Sentimental "does not design the materials and fabrics it purchases from other companies," but rather purchases "already-designed fabric" and "assemble[s] the dresses from the materials [] purchased").  From October 2007 to January 2008, Sentimental purchased from Malibu roughly 450 yards of lace containing Patter 1967 in eight different colors.  Pl. 56.1 ¶ 21; Samuels Decl., Ex. 6 (invoices documenting purchases).[3]  Malibu maintains that its

---

[2] Malibu received a supplemental Certificate of Registration for Pattern 1717 on April 22, 2008.  The supplemental registration clarifies that the Brazilian designer assigned her ownership rights in Pattern 1717, and did not create the work "for hire," as the original registration indicated.  *See* Pl. 56.1 ¶ 10; Samuels Decl., Ex. 3 at MAL021–023.

[3] Sentimental responds that Malibu "has not proven that the yards purchased were in fact [Pattern 1967]," but does not cite to any admissible evidence denying the validity or meaning of the invoices submitted by Malibu.  Defendant's Response to Plaintiff's Statement of Undisputed Material Facts (Doc. 51) ¶ 21.  More importantly, following his deposition, Sentimental's principal submitted a declaration stating that Sentimental, while vacating its premises, "found a small piece of lace fabric that we purchased from Malibu."  Declaration of Michael D. Steger

salespeople advise all prospective customers that Malibu's designs are copyrighted and proprietary, that Malibu samples and emails containing design images all contain similar notices, and that Malibu's practice is to place tags with a copyright notice on all samples that it ships out. Pl. 56.1 ¶¶ 5–7; Samuels Decl. ¶¶ 3–4.  Sentimental's principal and sole fabric purchaser Bassam Hourani ("Hourani") denies that he received notice that Pattern 1967 was copyrighted, however. *See* Hourani Aff. ¶¶ 15, 17.

On July 6, 2009, Sentimental issued a check to Global X Trading Company ("Global X") for $30,955.11 that constituted payment for certain fabrics Sentimental bought from Global X (the "Global X check").  Defendant's Response to Plaintiff's Statement of Undisputed Material Facts ("Def. 56.1 Resp.") (Doc. 51) ¶ 31; Declaration of Michael D. Steger ("Steger Decl.") (Doc. 46), Ex. 13 (Global X check).[4]  Citing different portions of Hourani's deposition testimony, the parties dispute whether the Global X check was in fact payment for fabric similar in appearance to Pattern 1967 (the "Accused Lace"), which now forms the basis for Malibu's claim of infringement.  Malibu argues that Sentimental bought Accused Lace from Global X, and proceeded to use that fabric in dresses that it sold, infringing on Malibu's Pattern 1967 copyright. *See* Pl. 56.1 ¶ 31; Steger Decl., Ex. 12 ("Hourani Tr.") at 29.[5]  Sentimental admits that it made

---

(Doc. 52), Ex. 18.  And indeed, the invoices all list the "Style" of lace purchased by Sentimental as "1967." *See* Samuels Decl., Ex. 6.  And even still, Sentimental's principal conceded that he "did make some purchases of material" from Malibu and does not expressly deny purchasing Pattern 1967, though he claims not to remember what materials were purchased and has no records of the purchase.  Hourani Aff. ¶¶ 15–17; Def. 56.1 ¶ 22.

[4] Although the Global X check has the word "Void" written on it, that word is crossed out, and the word "Cashed" is written above it and not crossed out. *Id.*  At his deposition, Hourani stated that the check was indeed cashed.  Steger Decl., Ex. 12, at 29:20–24.

[5] Malibu and Sentimental both submit different portions of Hourani's deposition, starting on November 14, 2014 and completed on September 21, 2015. *See* Steger Decl., Exs. 12, 14; Hourani Aff., Ex. C; Reply Declaration of Michael D. Steger ("Rep. Steger Decl.") (Doc. 54), Exs. 19, 20.  For ease of reference and because the pagination is continuous and consistent among all the exhibits, all citations to Hourani's deposition testimony will use "Hourani Tr." as a shorthand reference.

purchases from Global X,[6] but contends that Malibu has no proof that Sentimental ever purchased the Accused Lace from Global X or that the Global X check was payment for purchases of the Accused Lace.  *See* Def. 56.1 Resp. ¶ 31 (citing Hourani Tr. at 30, 62–63, 164); Hourani Aff. ¶¶ 19–20.[7]

In September 2013, Malibu noticed that certain dresses sold through the website NewYorkDress.com[8] featured the Accused Lace.  Samuels Decl. ¶ 15.  Malibu purchased two dresses (the "Accused Dresses") from the website on September 23, 2013.  Pl. 56.1 ¶ 23; Samuels Decl., Ex. 7 (invoice from NewYorkDress.com).  One of the Accused Dresses bore a tag that read "Sentimental 860," the other bore a tag that read "Sentimental 8872," and the hang tags of both dresses included the Sentimental NY name and logo.  Samuels Decl. ¶¶ 16–18, Ex. 8 (Sentimental 860), Ex. 9 (Sentimental 8872).[9]  The invoice from NewYorkDress.com described the Accused Dresses as "Sentimental 860" and "Sentimental 8872."  Samuels Decl., Ex. 7.  During discovery in this case, NewYorkDress.com produced sales printouts memorializing that the website has sold 310 dresses in Style 860 and two dresses in Style 8872 between April 29, 2010 and November 3, 2013.  *See* Steger Decl., Ex. 15.

---

[6] Hourani admitted that Sentimental has bought lace and other fabric from Global X.  *See* Hourani Tr. at 58.

[7] Sentimental's Answer to Malibu's complaint asserted the following as an affirmative defense:  "Defendants did not manufacture the alleged infringing design, but purchased same from Global X Trading Company,…who did not inform Defendants that the design was allegedly copyrighted."  Answer (Doc. 10) at 6.  Subsequently, however, Sentimental withdrew this affirmative defense after Hourani purported to better understand the issue during his deposition.  *See* Hourani Aff. ¶ 20 ("In light of my deposition testimony, I am withdrawing the Thirteenth Affirmative Defense in the Answer.  While I did relay to my attorneys that I *believed* I purchased [Accused Lace] from Global, and had no intent to infringe, I understood the question better at my deposition.  I clarified at my deposition that I do not recall specifically what I purchased from Global, and that it could have been any fabric.  Moreover, there does not exist any evidence as to what material I actually purchased from Global, which is now defunct, and I therefore cannot confirm what I purchased, as I stated at my deposition.") (citations omitted).

[8] NewYorkDress.com was originally named as a defendant in this action, but Malibu voluntarily dismissed its claims against the website on June 6, 2014.  Doc. 16.

[9] Hourani stated at his deposition that the Accused Dresses displayed "similar" tags to those Sentimental actually uses, and he did not have another explanation as to why the Accused Dresses had such tags beyond speculating that they may be counterfeit.  *See* Hourani Tr. at 138, 144.

Also during discovery, NewYorkDress.com produced an invoice, dated "9/26/13," that documents a purchase by the website of two items from Sentimental (the "NYDress Invoice"). Steger Decl., Ex. 16.[10]  For the first invoice item, the item number is "SN860," the color is "BK/RD," the size is "S/M," and the description is "L/S Jeweled Lace Dress."  *Id.*  The Accused Dress labeled "Sentimental 860," which Malibu purchased from NewYorkDress.com, is a small/medium-sized dress featuring a black lace over a red body.  Samuels Decl., Exs. 7, 8.  For the second invoice item, the item number is "SN8872," the color is "BK/NU," the size is "M/L," and the description is "V Neck w/ Rhinestone."  Steger Decl., Ex. 16.  The Accused Dress labeled "Sentimental 8872," which Malibu purchased from NewYorkDress.com, is a medium/large-sized dress featuring a black lace over a nude body.  Samuels Decl., Exs. 7, 9.  Again, both Accused Dresses feature the Accused Lace, *i.e.*, lace containing a fabric design that Malibu believes to be substantially similar to Pattern 1967.[11]  During his deposition, Hourani testified that he was not sure whether the Accused Lace he allegedly bought from Global X was used to manufacture the Accused Dresses.  *See* Hourani Tr. at 62–63; Def. 56.1 Resp. ¶ 38.

In November 2013, Malibu sued Sentimental and NewYorkDress.com for copyright infringement in federal court in Los Angeles.  Pl. 56.1 ¶ 27; Steger Decl., Ex. 10.  In the course of that litigation, Hourani submitted a declaration (the "California Declaration") stating as follows:  "The garment pictured in Malibu Textile's complaint in this case was sold by [Sentimental] to a company called NY Dress."  Steger Decl., Ex. 11 at p. 2, ¶ 5.[12]  After the

---

[10] It is unclear from the face of the document whether the purchase occurred on September 26, or whether the invoice was created or printed on that date and memorializes an earlier, undated transaction.

[11] Whereas NewYorkDress.com paid Sentimental NY $59.00 for SN860 and $110.00 for SN8872, Malibu paid NewYorkDress.com $139.00 for Sentimental 860 and $249.00 for Sentimental 8872.  *Compare* Samuels Decl., Ex. 7, *with* Steger Decl., Ex. 16.

[12] The garment pictured in the complaint filed in California is the same as the Accused Dress tagged as Sentimental 860.  *Compare* Steger Decl., Ex. 10 at p.5, *with* Samuels Decl., Ex. 8.

California litigation was dismissed for lack of personal jurisdiction and Malibu initiated the instant lawsuit in this Court, Hourani was shown the NYDress Invoice at his deposition and seemed to verify that the document memorialized a "wholesale sale to NewYorkDress" and that NewYorkDress.com had previously purchased the 860-style dress in various fabrics from Sentimental. *See* Hourani Tr. at 74:16–75:8.

Sentimental concedes that it regularly sold clothing to NewYorkDress.com,[13] but denies that it sold to the website the two particular Accused Dresses purchased by Malibu. Def. 56.1 Resp. ¶ 23; Hourani Tr. at 19–20 (describing NewYorkDress.com as Hourani's "only customers" in New York and his "biggest customer").[14] First, Hourani describes the California Declaration as a "miscommunication" between him and his attorneys occurring as a result of his poor English-language skills, and insists that he "was simply trying to communicate to my attorneys that I sold dresses to New York companies *in general*, not necessarily to NYDress, and therefore California is an improper jurisdiction; not that I sold the dress pictured in the California Complaint to NYDress." Hourani Aff. ¶¶ 41–42. Furthermore, Sentimental maintains that "860" and "8872" are numbers indicating the style and body-type of the garment, not a particular fabric design, meaning the two dresses sold to NewYorkDress.com (and the 312 dresses sold by NewYorkDress.com) may have been in the same style as the Accused Dresses but did not necessarily feature a fabric design similar to Pattern 1967. *Id.* ¶¶ 14, 36. Sentimental also represents that there are "numerous" counterfeit Sentimental garments available on the market that copy Sentimental's styles, labels, and tags, and Sentimental thus takes the position that the

---

[13] Hourani confirmed during his deposition that Sentimental previously authorized NewYorkDress.com to "have our line" on the website. *See* Hourani Tr. at 141–42.

[14] Prior to this litigation, Sentimental apparently lost most of its paper and electronic records due to flooding and a software crash, respectively. *See* Hourani Aff. ¶¶ 9–10

Accused Dresses were in fact knock-offs of Sentimental dresses that NewYorkDress.com bought from another source.  *See id.* ¶¶ 26–28; *id.*, Ex. C ("Hourani Tr.") at 87, 95, 138–40.  As an example, Sentimental submits a screenshot from the website LovelyWholesale.com displaying a dress that features lace similar in design to the lace of the Accused Dresses, for a significantly cheaper price than the Accused Dresses sold for on NewYorkDress.com.  *Id.*, Ex. D.[15]

In further support of its claims, Malibu has submitted screenshots of five different pages from Sentimental's website that were captured in September 2015.  Steger Decl., Ex. 17.  According to Malibu, these five pages—displaying various dresses with lace that Malibu alleges to be substantially similar to Pattern 1967, including Style 860—demonstrate that Sentimental was selling infringing products as of September 2015.  *See* Pl. 56.1 ¶ 35; Hourani Tr. at 158:2–8 (confirming that one of the dresses is Style 860).  Sentimental disputes this characterization, because Hourani testified that the particular dresses on the screenshots were no longer for sale, that the website had not been updated "for a long time" and that customers could not place orders for dresses via the website, which served exclusively as a "lookbook."  Def. 56.1 Resp. ¶ 35; Hourani Aff. ¶ 13; Hourani Tr. at 158–63.

Malibu filed the instant suit in this Court on April 11, 2014 and moved for summary judgment on all issues except damages on February 12, 2016.  (Docs. 2, 43).  Sentimental cross-moved for summary judgment on March 15, 2016.  (Doc. 49).

All of the pictures of the fabric designs at issue here, submitted to the Court by Malibu, are attached to this Opinion and Order as Exhibits 1, 2, and 3.  Exhibit 1 contains pictures of

---

[15] Hourani states that Sentimental does not have the resources to litigate against these various counterfeiters, especially because many of them are located in China or other foreign countries.  Hourani Aff. ¶ 27.

Pattern 1967, Exhibit 2 contains pictures of the Accused Dress labeled Sentimental 860, and

Exhibit 3 contains pictures of the Accused Dress labeled Sentimental 8872.[16]

## II. SUMMARY JUDMGENT STANDARD

To prevail on summary judgment, the movant must show that the admissible evidence

and pleadings leave "no genuine dispute as to any material fact."  Fed. R. Civ. P. ("FRCP")

56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a

verdict for the non-moving party."  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d

454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d

Cir. 2009)).  "A 'material' fact is one that might 'affect the outcome of the litigation under the

governing law.'"  *Id.*  "The function of the district court in considering the motion for summary

judgment is not to resolve disputed questions of fact but only to determine whether, as to any

material issue, a genuine factual dispute exists."  *Kaytor v. Elec. Boat Corp*., 609 F.3d 537, 545

(2d Cir. 2010).

The party moving for summary judgment is first responsible for demonstrating the

absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986).  Where "the burden of proof at trial would fall on the nonmoving party, it ordinarily is

sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential

element of the nonmovant's claim."  *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d

Cir. 2009) (citing *Celotex*, 477 U.S. at 322–23).  If the moving party meets its burden, "the

nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue

of fact for trial in order to avoid summary judgment."  *Jaramillo v. Weyerhaeuser Co*., 536 F.3d

140, 145 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 322–23).

---

[16] Exhibit 1 attached to this Opinion is Samuels Decl., Ex. 4.  Exhibit 2 attached to this Opinion is Samuels Decl., Ex. 8.  Exhibit 3 attached to this opinion is Samuels Decl., Ex. 9.

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citing *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). "When, as in this case, both sides move for summary judgment, the district court is 'required to assess each motion on its own merits and to view the evidence in the light most favorable to the party opposing the motion, drawing all reasonable inferences in favor of that party.'" *Asberry v. Hartford Life & Acc. Ins. Co.*, No. 14 Civ. 69 (JMF), 2015 WL 857883, at *3 (S.D.N.Y. Feb. 27, 2015) (quoting *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011)). Thus, "neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it." *Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir. 1993).

## III. DISCUSSION

The Copyright Act gives the owner of a copyright certain "exclusive rights," 17 U.S.C. § 106, to protect "original works of authorship," including "pictorial" and "graphic" works, 17 U.S.C. § 102(a). "The word 'copying' is shorthand for the infringing of any of the copyright owner's [] exclusive rights described in § 106." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (citation and internal quotation marks omitted). Among the exclusive rights granted to copyright owners are the rights "to reproduce" the copyrighted work and "to distribute" products bearing the copyrighted work. §§ 106(1), (3).

To prevail on its claim for copyright infringement, Malibu must establish two main elements, the second of which entails two sub-parts. *First,* Malibu must prove that its work is protected by a valid copyright. *Second,* Malibu must prove that Sentimental infringed Malibu's

copyright, which means that Sentimental both (a) actually copied Malibu's work, and (b) that the copying was illegal because a substantial similarity exists between Sentimental's work and the protectable elements of Malibu's work.  *See Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 100 (2d Cir. 2014) (citing *Arnstein v. Porter*, 154 F.2d 464, 468, 472–73 (2d Cir. 1946); *Laureyssens v. Idea Grp., Inc.*, 964 F.2d 131, 139–41 (2d Cir. 1992)); *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010) (citing *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999)); *see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

## A. Valid Copyright

Not all elements of a work qualify for copyright protection, only original expression. "[I]n order to qualify for copyright protection, a work must 'possess[] at least some minimal degree of creativity,' although the 'vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble, or obvious it might be.'" *Ward v. Barnes & Noble, Inc.*, 93 F. Supp. 3d 193, 200 (S.D.N.Y. 2015) (quoting *Feist*, 499 U.S. at 345), *reh'g denied*, No. 13 Civ. 7851 (JMF), 2015 WL 1442449 (S.D.N.Y. Mar. 30, 2015).  Copyright protection is not available for ideas, 17 U.S.C. § 102(b), nor is it available for elements of works that are inherent, natural, or necessary given the idea being expressed in a given work.  *Id.* (explaining *scénes á faire* doctrine).[17]

---

[17] The "scènes-à-faire" doctrine "teaches that elements of a work that are 'indispensable, or at least standard, in the treatment of a given topic'—like cowboys, bank robbers, and shootouts in stories of the American West—get no protection."  *Zalewski*, 754 F.3d at 102 (quoting *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 979 (2d Cir. 1980)); *see also Ward*, 93 F. Supp. 3d at 200 (describing *scénes á faire* doctrine as holding that "protection does not extend to sequences of events that necessarily result from the choice of a setting or situation," or to "elements of an image that flow naturally and necessarily from the choice of a given concept") (citations and internal quotation marks omitted).

It is well established that "fabric designs…are considered 'writings' for purposes of copyright law and are accordingly protectible." *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir. 1995) (citing *Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 763 (2d Cir. 1991)); *see also Klauber Bros. v. Target Corp.*, No. 14 Civ. 2125 (TPG), 2015 WL 4393091, at *5 (S.D.N.Y. July 16, 2015).  Furthermore, it is undisputed that Malibu has a valid copyright registration in Pattern 1967 as a fabric design.  *See* Samuels Decl., Ex. 5.  Since that copyright registration was obtained within five years of the publication of Pattern 1967, the registration constitutes "prima facie evidence of the validity of the copyright and of the facts stated in the certificate."  17 U.S.C. § 410(c); *see also Hamil*, 193 F.3d at 98 ("A certificate of registration from the United States Register of Copyrights constitutes prima facie evidence of the valid ownership of a copyright, although that presumption of ownership may be rebutted.") (citations omitted).  After an authentic copyright registration is proffered, the party "challenging the validity of the copyright has the burden to prove the contrary."  *Hamil*, 193 F.3d at 98 (citation omitted).

Sentimental attempts to rebut the presumption with several arguments that all fail for essentially the same reason, in that they all identify discrete, non-protectable elements of Pattern 1967 and try to preclude copyright protection for Pattern 1967 in its entirety simply because it includes those elements.  *See* Defendants' Reply Memorandum of Law ("Def.'s Rep.") (Doc. 55) at 4–5 (arguing that Pattern 1967 is not copyrightable because it displays flowers in a generic pattern within public domain, and because it is reproduced on a useful article).

Sentimental first argues that Pattern 1967 is in the public domain and thus not protectable because it contains floral patterns and "there are only so many ways to employ floral patterns in fabric."  Defendants' Memorandum of Law ("Def.'s Br.") (Doc. 58) at 8–9; Def.'s Rep. at 5.

Flowers *qua* flowers are of course in the public domain and not copyrightable, but particular

creative expressions and arrangements of flowers may be protectable.  Indeed, while Sentimental

relies on the Second Circuit's decision in *Folio Impressions*, the *Folio* court expressly held that

the floral-pattern fabric design at issue in that case *was* original and copyrightable; it did not

refuse to find copyright protection solely because the patterns at issue depicted flowers.  *See*

*Folio Impressions*, 937 F.2d at 763–65.  Sentimental's reliance on the *scénes á faire* doctrine is

unavailing for the same reason.  That doctrine has never been invoked in the way Sentimental

seeks to use it here—namely, to categorically disqualify floral patterns from copyright

protection.  *See* Def.'s Br. at 9 ("Pattern 1967 constitutes '*scénes á faire*' since there are only so

many ways to employ floral patterns in fabric, and virtually all floral patterns contain a flower,

with branches and leaves sprouting from it.").  There are numerous ways to creatively design and

stylize representations of flowers, and the mere fact that a fabric design is floral in nature does

not preclude copyright protection for "the original way in which the author has 'selected,

coordinated, and arranged' the elements of his or her work."  *Knitwaves*, 71 F.3d at 1004

(quoting *Feist Publ'ns*, 499 U.S. at 358).

Sentimental next argues that, because 17 U.S.C. § 102(b) prohibits copyright protection

for ideas, such as a "procedure," process," or "method of operation," Pattern 1967 cannot be

copyrighted because "[a] pattern is a 'procedure, process or method of operation' for making

something."  Def.'s Br. at 9.  But this argument misunderstands the nature of Malibu's copyright.

Malibu does not have rights in the generic pattern employed in Pattern 1967—another creator

could, for example, create a fabric design using some other type of non-flower image arrayed in

similar pattern, spacing, and orientation as Pattern 1967 without infringing on Malibu's

copyright.  But Sentimental's strained reliance on § 102(b) does not speak at all to Malibu's

rights in the particular arrangement of particularly-designed flowers that constitute Pattern 1967 as a whole. *Cf. Folio Impressions*, 937 F.2d at 765 ("[W]hat is protected in this case is the Folio Rose itself and the way in which *that* rose is arranged; the copyright umbrella does not cover the idea of arranging roses generally in a straight line pattern."). Sentimental unsurprisingly does not cite to a single authority in support of its § 102(b) argument, and the Court rejects it.

Sentimental's final argument is that Pattern 1967 is not protectable because items of clothing are generally useful articles and thus not protectable under copyright law. Def.'s Br. at 10; Def.'s Rep. at 4–5. This argument too is inapt: Malibu's copyright is for a fabric design, not a piece of clothing or clothing design. *See, e.g.*, *Knitwaves*, 71 F.3d at 1002 (distinguishing protectable fabric designs from useful and generally non-protectable articles of clothing); *Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*, 808 F. Supp. 2d 542, 551 (S.D.N.Y. 2011) (same), *aff'd sub nom. Jovani Fashion, Ltd. v. Fiesta Fashions*, 500 F. App'x 42 (2d Cir. 2012); 1-2A Nimmer on Copyright § 2A.08[H][1] (2015) (distinguishing between a "fabric design," *i.e.*, "the design imprinted on a fabric, such as a rose petal," which may appear once or repeatedly in a pattern on a completed piece of clothing, and a "dress design," which "graphically sets forth the shape, style, cut, and dimensions for converting fabric into a finished dress or other clothing garment").

Sentimental has failed to set forth any concrete evidence or persuasive arguments to rebut the presumption of validity created by Malibu's copyright registration. The mere inclusion of non-protectable elements within Pattern 1967 does not render the entire work non-protectable *per se*. *See Odegard, Inc. v. Costikyan Classic Carpets, Inc.*, 963 F. Supp. 1328, 1335 (S.D.N.Y. 1997) ("In determining whether a fabric design is sufficiently original to be copyrightable, the Court of Appeals for the Second Circuit has stated that 'a work may be copyrightable even though it is entirely a compilation of unprotectible elements.' Even if the motifs themselves are

not copyrightable, the designer of a fabric may copyright its selection and arrangement of motifs, or its combining of motifs.") (quoting *Knitwaves*, 71 F.3d at 1003–04).  Pattern 1967 is thus presumed to be copyrightable and original, and the Court grants summary judgment in Malibu's favor on the issue of copyright validity.  *See Malibu Textiles, Inc. v. Carol Anderson, Inc.*, No. 07 Civ. 4780 (SAS), 2008 WL 2676356, at *4, 7 (S.D.N.Y. July 8, 2008); *see also Hamil*, 193 F.3d at 98–99; *Folio Impressions*, 937 F.2d at 765; *MPD Accessories B.V. v. Urban Outfitters*, No. 12 Civ. 6501 (LTS), 2014 WL 2440683, at *6 (S.D.N.Y. May 30, 2014) ("There is no genuine dispute that the color, size, arrangement and repetition of the shapes were all the aesthetic choices of the Plaintiff.  Their unique combination can be protected as a whole."), *appeal dismissed*, No. 14-4224 (2d Cir. Jan. 14, 2015).

## B. Infringement

To prevail on its copyright claims, Malibu must prove that Sentimental engaged in conduct that infringed on Malibu's exclusive rights "to reproduce" or "to distribute" works substantially similar to Pattern 1967.  *See* 17 U.S.C. §§ 106(1), (3).  Thus, once Malibu has established that Sentimental actually engaged in the activities alleged herein, it must further prove that Sentimental's conduct constituted infringement, which, as previously noted, entails proof that (1) Sentimental has "actually copied" Malibu's work, and (2) "'the copying is illegal because a substantial similarity exists between [Sentimental's] work and the protectible elements of plaintiff's.'"  *Peter F. Gaito Architecture*, 602 F.3d at 63 (quoting *Hamil*, 193 F.3d at 99). The Court will address each of these issues in turn.

## (1) "Actual Copying"

Although it is not often in dispute in copyright cases, a plaintiff must prove that a defendant was the party in fact responsible for creating and/or distributing the allegedly

14

infringing work.  That issue is in dispute in this case, as is discussed immediately below.  In addition, a plaintiff must prove "actual copying," which is a "term of art to mean that the defendant, in creating its work, used the plaintiff's material as a model, template, or even inspiration."  *Mannion v. Coors Brewing Co.*, 377 F. Supp. 2d 444, 449 (S.D.N.Y. 2005) (citation and internal quotation marks omitted).  "Actual copying may be shown by direct or indirect evidence; indirect evidence of copying includes proof that the defendants had access to the copyrighted work and similarities that are probative of copying between the works."  *Hamil*, 193 F.3d at 99 (citing *Repp v. Webber*, 132 F.3d 882, 889 (2d Cir. 1997)).

**(a) Production or Sales of the Accused Lace**

Sentimental's primary argument in opposing Malibu's motion is that Malibu has failed to tender proof that Sentimental had any "link" to the Accused Dresses, because there is no evidence that Sentimental bought Accused Lace from Global X, and no evidence that Sentimental made and sold the Accused Dresses to NewYorkDress.com.  *See* Def.'s Br. at 2–3; *id.* at 15 ("Plaintiff cannot prove or trace the accused product to Defendant given the lack of evidence and records, and that there is absolutely no evidence available as to what materials were purchased from Global X Trading Company, and Defendant never sold infringing materials….").  According to Malibu, however, the evidence shows that "Sentimental purchased a substantial quantity of copyrighted lace from Malibu, then bought tens of thousands of dollars of a knockoff lace design from a third party, advertised that design on its website and sold it to retailers," including "over 300 dresses bearing the Accused Design to NewYorkDress.com."  Plaintiff's Omnibus Reply Memorandum ("Pl.'s Rep.") (Doc. 53) at 7 ("Because of Sentimental's lack of records, it cannot demonstrate how many other garments it sold that infringed on Malibu's

Subject Design, and it now tries to use its lack of records as conclusive proof that it could not have infringed Malibu's copyrighted design.").

There are three distinct factual issues embedded in these arguments: (i) whether Sentimental purchased Accused Lace from Global X, (ii) whether Sentimental sold Accused Lace to NewYorkDress.com, and (iii) whether Sentimental continued to make the Accused Lace available for sale up through September 2015.

### (i) Purchases from Global X

While the mere act of purchasing Accused Lace from Global X is not the alleged infringing activity here, Malibu submits this evidence as probative of Sentimental's larger efforts to acquire samples of Pattern 1967, pay Global X to reproduce the fabric design *en masse*, and resell dresses featuring that fabric at prices that undercut Malibu's market. *See* Pl.'s Rep. at 7.

Sentimental rightly notes that the Global X check from 2009 does not indicate what materials were involved in that transaction.[18]  Thus, whether Sentimental purchased Accused Lace from Global X boils down to the parties' battling interpretations of Hourani's deposition testimony.  The Court agrees with Sentimental that Hourani never conclusively stated that he bought Accused Lace from Global X and frequently stated that he did not remember one way or another.  *See* Def. 56.1 Resp. ¶ 31 (citing Hourani Tr. at 30, 62–63, 164).  But, when asked whether the garments at issue in this case "came from Global X," Hourani made certain comments that plausibly suggest that they did so.  *See* Hourani Tr. at 62–63 ("It could come from them, that's why I say this fabric could come from them *because they sold me fabric like this*, but it was a long time [ago]….Yeah, it could come from Global because *I remember they sold me*

---

[18] Sentimental's argument that there is no evidence the Global X check was cashed, however, is belied by (i) the face of the check itself, which says "Cashed," (ii) what appears to be a stamp on the back of the check indicating that the check was deposited, and (iii) Hourani's own deposition testimony. *See* Steger Decl., Ex. 13 (check and deposit stamp); Hourani Tr. at 29:21–22 ("It was not void, it was cashed.").

*this.*  I didn't say is not the same pattern.  I cannot confirm it is exact same pattern as from

them.") (emphasis added).  And although it is not determinative, Malibu rightly points out that

one of Sentimental's affirmative defenses in its Answer—since withdrawn after Hourani's

deposition—was that the Accused Dresses were purchased from Global X.  *See* Answer (Doc.

10) at 6; *supra* n.7.

Thus, neither party has conclusively established its position based on the evidence in the

record.  A reasonable juror could find that Sentimental bought Accused Lace from Global X, but

she would not be required to do so.

### (ii) Sales to NewYorkDress.com

Malibu proffers a significant amount of circumstantial evidence to support a finding that

Sentimental sold Accused Lace to NewYorkDress.com:  The NYDress Invoice, corroborated as a

record of a "wholesale sale" by Hourani, the California Declaration directly stating that the sales

of the Accused Dresses took place, and testimony from Hourani describing NewYorkDress.com

as one of Sentimental's regular customers.  The Accused Dresses themselves, moreover, are

probative because a reasonable juror could conclude that the presence of Sentimental tags and

labels means the garments were genuine Sentimental products and not counterfeits.  *See* Pl.'s

Rep. at 4–5.

Sentimental relies exclusively on Hourani's testimony to dispute that Sentimental sold

the Accused Dresses to NewYorkDress.com.  The gravamen of that testimony is that Malibu has

no evidence that the garments Sentimental admittedly sold to NewYorkDress.com actually

contained any Accused Lace, because the mere listing of Style Nos. 860 and 8872 on the

NYDress Invoice refers *only* to the style and shape of the garments, *not* to the type of fabric

design used.  Furthermore, Hourani's explanation for the Sentimental tags on the Accused

Dresses is that there were multiple sources of counterfeit Sentimental garments available, and NewYorkDress.com—despite being a regular customer of Sentimental—nevertheless purchased and sold these counterfeit items on its website.  *See* Def.'s Rep. at 6.

Again, Malibu's evidence on this issue is significant, but it is also ultimately circumstantial—there is no direct and conclusive proof that that Sentimental sold Accused Lace to NewYorkDress.com, and there is at least a plausible explanation from Hourani rebutting each element of the circumstantial evidence, which a reasonable juror could credit.  To grant summary judgment in Malibu's favor would require the Court to completely disregard Hourani's affidavit and testimony, which it cannot do.[19]

### (iii) Availability via Sentimental's Website

Finally, Malibu submits screenshots from Sentimental's website to argue that Sentimental was still selling Accused Lace as late as September 2015, almost two years after Malibu first sued Sentimental in California.  But Hourani was clear in his affidavit and testimony that customers cannot buy dresses from Sentimental's website and that the website had not been

---

[19] Malibu, invoking the so-called "sham issue of fact" doctrine, urges the Court to disregard Hourani's affidavit and deposition testimony in this case and instead take the California Declaration as undisputed truth.  *See* Pl.'s Rep. at 5. The "sham issue of fact" doctrine stands for the proposition that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony."  *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) (citing *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)).  The Court declines Malibu's invitation to give controlling weight to the California Declaration for two reasons.  First, although it is not particularly compelling, Hourani's explanation that the California Declaration was fundamentally about Sentimental's lack of business outside of New York, and not a decisive admission that Sentimental sold the particular Accused Dresses to NewYorkDress.com, is at least plausible, and not a glaring enough contradiction to put this into the category of "extraordinary cases" in which the doctrine applies.  *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir. 2011) ("[I]f there is a plausible explanation for discrepancies in a party's testimony, the court considering a summary judgment motion should not disregard the later testimony because an earlier account was ambiguous, confusing, or simply incomplete.") (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 555 n.2 (2d Cir. 2005)).  Second, Malibu has not provided sufficient authority to overcome the Court's concern towards crediting non-deposition testimony from another proceeding over deposition testimony given in the instant proceeding.  *See Reese v. Herbert*, 527 F.3d 1253, 1270 n.28 (11th Cir. 2008) ("[W]e would be reluctant to disregard an affidavit of a witness, whether or not a party in the case, on the ground that it is inconsistent with testimony the witness gave in another proceeding."); *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007) ("The main practical reason supporting the sham affidavit doctrine is that prior depositions are more reliable than affidavits.") (citing *Perma Research*, 410 F.2d at 578).

updated for years.  *See* Hourani Aff. ¶ 13; Hourani Tr. at 158–63.  Malibu has not disputed this

point with evidence.  Hourani's testimony, however, does seem to suggest that customers can

view dresses on the website and then place orders by phone.  *See* Hourani Tr. at 158:20–24

(stating that, if a customer called to ask about Style No. 860 displayed on the website,

Sentimental would tell a "big customer" that "we can make it for them, it is something we can

make….It depends who is the customer and what he wants and what we can do."); *id.* at 159:5–

11 (stating that sales are only done via phone or face-to-face, not via the website).  Whether

Sentimental sold Accused Lace via its website, or via phone or in-person orders, is a genuine

issue of material fact.

In sum, then, the state of the record is such that the Court is precluded from conclusively

determining whether Sentimental purchased Accused Lace from Global X, sold Accused Lace to

NewYorkDress.com, or made Accused Lace available via its website in recent years.[20]  Drawing

all reasonable inferences in favor of the non-movant, as the Court must, both motions for

summary judgment are denied as to the issue of whether Sentimental in fact reproduced or

distributed Accused Lace.  *See Pearson Educ., Inc. v. Ishayev*, 9 F. Supp. 3d 328, 340–41

(S.D.N.Y. 2014) (denying summary judgment where genuine issue of fact existed as to whether

defendant sold or distributed allegedly infringing works).

**(b) Access**

"Access means that an alleged infringer had a 'reasonable possibility'—not simply a

'bare possibility'—of [viewing] the prior work; access cannot be based on mere 'speculation or

---

[20] Sentimental also argues that the Court cannot grant summary judgment in Malibu's favor on these factual issues
because the NYDress Invoice has not been properly authenticated.  Def.'s Rep. at 6.  The authenticity of that
invoice, however, was sworn to via declaration by Malibu's counsel.  *See* Steger Decl., ¶ 7.  And in any event, the
Court has denied summary judgment on these issues for independent reasons, such that the admissibility of the
NYDress invoice can be dealt with via motion *in limine* prior to trial, if necessary.

conjecture.'" *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003) (quoting *Gaste v. Kaiserman*, 863 F.2d 1061, 1066 (2d Cir. 1988)).

Here, there is clear evidence that Sentimental had access to Pattern 1967. Malibu has produced invoices documenting Sentimental's purchases of the lace in 2007 and 2008, Samuels Decl., Ex. 6,[21] and an affidavit from Hourani confirming that he found a sample of the lace in Sentimental's offices, Declaration of Michael D. Steger (Doc. 52), Ex. 18. *See Hamil*, 193 F.3d at 99 (finding access where defendant had purchased fabric and received sample); *Imperial Laces Inc. v. Westchester Lace Inc.*, No. 95 Civ. 5353 (BSJ), 1998 WL 830630, at *3 (S.D.N.Y. Nov. 30, 1998) (finding access where defendant's president "believe[d] he saw" plaintiff's lace design prior to designing alleged infringing work); *Textile Innovations, Ltd. v. Original Textile Collections, Ltd.*, No. 90 Civ. 6570 (CSH), 1992 WL 125525, at *5 (S.D.N.Y. May 26, 1992) (finding access where defendant "received a sample of the pattern"); *cf. Mister B Textiles Inc. v. Woodcrest Fabrics, Inc.*, 523 F. Supp. 21, 26 (S.D.N.Y. 1981) ("In order for this court to conclude that defendant lacked access, we would have to assume that some third party is producing fabric which is exactly the same as plaintiff's fabric. The more reasonable conclusion is that defendant was given an unmarked piece of plaintiff's fabric which was then used in making defendants design."). Hourani does not deny buying the lace from Malibu; he merely attests that he does not remember what he purchased one way or another.

No reasonable juror could conclude that Sentimental did not have access to Pattern 1967. The Court thus grants Malibu's motion for summary judgment on the issue of access.

---

[21] Sentimental argues that there is no admissible evidence of access because the invoices purporting to show sales of Pattern 1967 from Malibu to Sentimental lack a proper foundation. Def.'s Br. at 11. This argument is meritless. Malibu's Vice President, Richard Samuels, who swore via declaration to having personal knowledge of Malibu's business records and serving as a record custodian, authenticated and laid a foundation for the invoices via that declaration. Samuels Decl. ¶¶ 1, 14; *see also* Fed. R. Civ. P. 56(c)(4); Fed. R. Evid. 901(b)(1); *United Magazines Co. v. Murdoch Magazines Distrib., Inc.*, 353 F. Supp. 2d 433, 442 n.8 (S.D.N.Y. 2004), *aff'd sub nom. United Magazine Co. v. Curtis Circulation Co.*, 279 F. App'x 14 (2d Cir. 2008).

### (c) Probative Similarity

The issue of "probative similarity" is often confused with "substantial similarity."  The former concept is a more lenient standard that applies to both works *in their entirety* and is used to gauge whether any copying has in fact occurred.  But because not all copying is actionable as infringement—especially when the copyrighted work contains many non-protectable elements, as Pattern 1967 does—the latter concept is used to compare the allegedly infringing works with the *protectable* elements of the copyrighted work, in order to determine whether the alleged infringing work contains enough appropriation of the original expression in the copyrighted work to constitute infringement.  *See Zalewski*, 754 F.3d at 101 (defining the two types of similarity); *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 75 (2d Cir. 1997) ("The former (probative similarity) requires only the fact that the infringing work copies something from the copyrighted work; the latter (substantial similarity) requires that the copying is quantitatively and qualitatively sufficient to support the legal conclusion that infringement (actionable copying) has occurred.").

"Under the probative similarity analysis used in this Circuit, the Court must look at each work in its entirety, including protectible and unprotectible elements."  *Porto v. Guirgis*, 659 F. Supp. 2d 597, 609 n.4 (S.D.N.Y. 2009) (citations omitted).  "'Probative similarity is a less demanding test than substantial similarity and requires only that the works are similar enough to support an inference that the defendant copied the plaintiff's work.  Stated somewhat differently, the plaintiff must establish that there are similarities between the two works that would not be expected to arise if the works had been created independently.'"  *Blakeman v. The Walt Disney Co.*, 613 F. Supp. 2d 288, 304 (E.D.N.Y. 2009) (quoting *Eve of Milady v. Moonlight Design Inc.*, No. 98 Civ. 1549 (LAP), 1998 WL 849074, at *4 (S.D.N.Y. Aug. 11, 1998)).

Viewed in their entirety, considering both protectable and non-protectable elements, Pattern 1967 and the Accused Lace are similar in the overall shape, pattern, and array of flowers, sprigs, leaves, and spaces of transparent lace.  *Compare supra* Ex. 1, *with supra* Exs. 2, 3. Sentimental does not even attempt to argue that the Accused Lace was independently created, focusing instead on the lack of substantial similarity.  Summary judgment is thus granted in Malibu's favor on the issue of probative similarity.  *See Lewinson v. Henry Holt & Co., LLC*, 659 F. Supp. 2d 547, 563–64 (S.D.N.Y. 2009).

### (d) Conclusion on "Actual Copying"

On the record before the Court, there is no genuine issue of material fact with respect to (i) whether Sentimental had access to Pattern 1967, and (ii) whether the Accused Lace has similarities to Pattern 1967 that are at least probative of copying.  There is, however, conflicting evidence as to whether Sentimental was in fact the party responsible for creating, reproducing, and/or distributing the Accused Lace.  That genuine factual issue precludes summary judgment in favor of either party on the issue of actual copying, because a reasonable juror could conclude that Sentimental never manufactured, bought, or sold Accused Lace and thus never copied, while another could find that Sentimental in fact engaged in one or all of those activities.

### (3) Substantial Similarity

"The standard test for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same."  *Peter F. Gaito Architecture*, 602 F.3d at 66 (citation and internal quotation marks omitted).  In applying this "ordinary observer test," the Court must "ask whether 'an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.'"  *Id.* (quoting *Knitwaves*, 71 F.3d at 1002).

Rather than dissect the fabric designs into their individual, protectable components, the Court should instead be guided by a comparison of "the contested design's 'total concept and overall feel' with that of the allegedly infringed work,'" using "good eyes and common sense." *Id.* (quoting *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 133 (2d Cir. 2003)); *Hamil Am.*, 193 F.3d at 102). "This is so because 'the defendant may infringe on the plaintiff's work not only through literal copying of a portion of it, but also by parroting properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art—the excerpting, modifying, and arranging of [unprotectible components]…—are considered in relation to one another.'" *Id.* (quoting *Tufenkian Import/Export Ventures*, 338 F.3d at 134). Thus, the Court's ultimate inquiry "focuses on whether the alleged infringer has misappropriated 'the original way in which the author has selected, coordinated, and arranged the elements of his or her work.'" *Id.* (quoting *Knitwaves*, 71 F.3d at 1004).

Because substantial similarity is a vague and necessarily case-by-case standard, "and because the question of substantial similarity typically presents an extremely close question of fact, questions of non-infringement have traditionally been reserved for the trier of fact." *Id.* at 63 (citing *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 911 (2d Cir. 1980) ("[T]he question of infringement is generally resolved by the fact-finder's prediction of the probable reaction of a hypothetical 'ordinary observer.'"); *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 977 (2d Cir. 1980) ("[S]ummary judgment has traditionally been frowned upon in copyright litigation.")). "The question of substantial similarity is by no means exclusively reserved for resolution by a jury, however," and the Second Circuit has "repeatedly recognized that, in certain circumstances, it is entirely appropriate for a district court to resolve that question as a matter of law, 'either because the similarity between two works concerns only non-copyrightable elements

of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar.'" *Id.* (quoting *Warner Bros. Inc. v. Am. Broad. Cos.*, 720 F.2d 231, 240 (2d Cir. 1983)).

Neither of those two scenarios is present here, and the Court thus cannot say that the fabric designs are not substantially similar as a matter of law, compelling denial of Sentimental's summary-judgment motion on this issue. Using the photo exhibits submitted by the parties— which, again, are attached in full as Exhibits 1–3—the Court has created its own zoomed-in snapshots of the best approximation of an individual "unit" in the respective fabric designs, and has rotated the images so they are similarly oriented. The left-most image is an excerpt from Pattern 1967. The two images on the right are excerpts from the Accused Dresses:

**Pattern 1967**[22]                    **Accused Lace on Accused Dresses**[23]



---

[22] Excerpted from *supra* Ex. 1 (*i.e.*, Samuels Decl., Ex. 4).
[23] Excerpted from *supra* Exs. 2, 3 (*i.e.*, Samuels Decl., Exs. 8, 9).

The individual units that constitute the pattern in the respective fabric designs appear decidedly similar:  each features (i) a flower in the middle of the images with five similarly-shaped petals, (ii) two paisley-shaped leaves sprouting from two petals of the flower at the top of the images, which are connected to each other in the same exact two spots and connected to the main flower and another sprig in the same exact two spots, and which contain three smaller markings draped immediately below the two paisley leaves, and (iii) a semi-circular sprig at the bottom of the images with similar (but not identical) leaves sprouting out on both sides, which curves out from one of the main flower's petals and then curves back to be reconnected with an adjacent petal.  The Court notes in particular that many of the smaller marks and connections between the various sprigs and leaves, such as the three small spots draping down from the two paisley leaves, appear in similar places and in similar numbers throughout the two designs, which is unlikely to occur had the Accused Lace been independently created.  These similarities are not premised simply on the inherent shape of a flower or sprig—they are similarities in the expressive style and design of the floral patterns themselves.

To be sure, there are some differences in spacing, shading, and thickness—for example, the spaces between petals of the flower in Pattern 1967 appear to be more filled-in than the more distinct petals in the Accused Dresses, and the leaves of the bottom semi-circular sprig are slightly more separated and distinct in the Accused Dresses.  But small shading differences alone are unlikely to render the fabric designs sufficiently distinct.  *See Textile Innovations*, 1992 WL 125525, at *5 ("The two samples differ only in the minutest details of shading.  Reasonable minds could not differ on the substantial and striking similarity between the two samples.").  And the Second Circuit has "stated that substantial similarity will be found between textile patterns when 'slight differences between the two patterns fade away when they are viewed from

25

a distance.'" *Cameron Indus., Inc. v. Mother's Work, Inc.*, 338 F. App'x 69, 71 (2d Cir. 2009)

(quoting *Hamil*, 193 F.3d at 102); *see also Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274

F.2d 487, 489 (2d Cir. 1960) ("[T]he ordinary observer, unless he set out to detect the disparities,

would be disposed to overlook them, and regard their aesthetic appeal as the same."). A

reasonable juror could very well determine that the differences in shading and thickness would

be negligible when the two fabric designs were worn as dresses. *See Hamil*, 193 F.3d at 102

(giving "due weight" to "the scrutiny that observers would give to the patterns *as used*"); *Soptra*

*Fabrics Corp. v. Stafford Knitting Mills, Inc.*, 490 F.2d 1092, 1094 (2d Cir. 1974) ("Here the

designs were to be used in dresses, and although small differences between the designs might be

found to exist under courtroom scrutiny, those differences fade away within a few feet or absent

sharp scrutiny."). Sentimental's motion is thus denied with respect to substantial similarity. *See*

*Premier Fabrics, Inc. v. Woodland Trading Inc.*, 42 F. Supp. 3d 549, 554 (S.D.N.Y. 2014)

("Taken together, however, the designs' 'total concept and overall feel' are quite similar.

Although a trier of fact ultimately may find that they are sufficiently distinct to preclude a

finding of copyright infringement, the Court cannot rule at this juncture as a matter of law that

they are so different as to demand dismissal of plaintiff's claims.").

  With all that said, however, the Court also cannot hold that the fabric designs *are*

substantially similar as a matter of law, given the present state of the record. Malibu's position is

that whatever "miniscule differences in thickness and emphases of the accented features" exist,

the fabric designs are nevertheless similar in "overall size, scale and layout." Plaintiff's

Memorandum of Points and Authorities ("Pl.'s Br.") (Doc. 44) at 11; Pl.'s Rep. at 9. But the

Court is not able to make such a finding based solely on the photos that have been submitted.

The Court cannot tell, for instance, if the individual units displayed above are the same size and

scale when reproduced on a garment, or the extent to which the respective units are oriented so as to create a similar pattern across an entire dress.  *Cf. Hamil*, 193 F.3d at 103 ("Here, GFI has duplicated Hamil America's selection of clustered flowers and leaves, its coordination of these elements in particular spatial combinations, and its arrangement of these design elements on a tossed pattern that appears in repeat.").  Although the Court has pictures showing the full body of the Accused Dresses, they are somewhat grainy and zoomed out.  Also, the Court does not have a similar picture of Pattern 1967 used in the context of a full garment.  *Compare supra* Ex. 1, *with supra* Exs. 2, 3.  There is thus no way to tell, for example, if a garment featuring Pattern 1967 that is the same size and dimensions as the Accused Dresses would contain more than, fewer than, or roughly the same number of individual units as the Accused Dresses contain.  *Cf. Cameron Indus.*, 338 F. App'x at 71 (noting that "difference in scale may be especially important when dealing with cases that address similar but subtly distinct patterns or that address the use, in essentially original ways, of items that are in the public domain").  Thus, on the record before it, the Court is unable to hold that *no* reasonable juror could find that the fabric designs have different "aesthetic appeal[s]" or "total concept[s] and feel," especially giving due weight to the actual use of the fabric designs in garments.  *Peter F. Gaito Architecture*, 602 F.3d at 66; *Hamil*, 193 F.3d at 102.

The parties' cross-motions are denied as to the issue of substantial similarity.  The jury will decide this issue at trial.  *See Heritage Lace, Inc. v. Fresh Finds, LLC*, No. 10 Civ. 7880 (KBF), 2012 WL 345904, at *4 (S.D.N.Y. Feb. 1, 2012) ("Are these disparities that an ordinary observer would be disposed to overlook?  It is a close call that a jury should decide.") (citations omitted).

**C. Enhanced Damages for Willful Infringement**

"When a plaintiff can demonstrate, either directly or through circumstantial evidence, that the defendant had knowledge that his actions constituted infringement, or recklessly disregarded such possibility, enhanced statutory damages for willful copyright infringement under 17 U.S.C. § 504(c)(2) may be awarded." *L.A. Printex Indus., Inc. v. Does 1-10*, 543 F. App'x 110, 111 (2d Cir. 2013) (citing *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 143 (2d Cir. 2010); *Isl. Software & Comput. Serv. v. Microsoft Corp.*, 413 F.3d 257, 264 (2d Cir. 2005)).

The parties cross-move for summary judgment on the issue of whether such enhanced statutory damages are available to Malibu in this case. For the same reasons that the Court denied both motions as to both Sentimental's actual copying and substantial similarity, the motions are denied as to willful infringement.[24]

In addition, willful infringement raises the issue of Sentimental's knowledge or reckless disregard of Malibu's copyright. To prove willfulness, Malibu must show (1) that Sentimental "was actually aware of the infringing activity," or (2) that Sentimental's actions "were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." *Heritage Lace*, 2012 WL 345904, at *4 (citing *Isl. Software*, 413 F.3d at 263); *see also Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 112 (2d Cir. 2001) ("Willfulness in this context means that the defendant 'recklessly disregarded' the possibility that 'its conduct represented infringement.'") (quoting *Hamil*, 193 F.3d at 97).

Malibu argues that Sentimental acted with reckless disregard when it acquired and sold Accused Lace for the following reasons: (1) Malibu includes a copyright notice on all of its

---

[24] These factual disputes alone distinguish the one case Malibu relies on to prove willfulness, *Spectravest, Inc. v. Fleet St., Ltd.*, No. 88 Civ. 4539 (RFP), 1989 WL 135386, at *2–3 (N.D. Cal. Aug. 23, 1989), because the defendant in that case conceded infringement, arguing only that the infringement was not willful because the plaintiff failed to provide legible notice.

samples, including the sample of Pattern 1967 purchased by Sentimental, *see* Samuels Decl., Ex. 1 (example of Malibu copyright notice), (2) Hourani testified that Sentimental does not inquire into the copyright status of fabric designs that it acquires, *see* Hourani Tr. at 53–56, and (3) Sentimental continued to make the Accused Lace available on its website up through September 2015, even though Malibu sued Sentimental over that very fabric design in California in November 2013.  *See* Pl.'s Br. at 13–14.  In response, Sentimental points to Hourani's attestation that he never recalled receiving any copyright notice from Malibu, and the absence of any proof that the specific samples Malibu provided to Sentimental in fact contained copyright notice.  *See* Def.'s Br. at 14; Hourani Aff. ¶ 17.  Sentimental also reiterates its position that it was not selling Accused Lace on its website in September 2015.

Willfulness in this case therefore comes down to resolving the factual issues of whether Sentimental actually received notice of Malibu's copyright, or alternatively, if Sentimental should have known that it was infringing on Malibu's rights when it allegedly purchased and resold Accused Lace.  The current record would allow a reasonable juror to come down either way, and resolving the issue will entail the weighing of both documentary evidence and witness credibility.  Sentimental's willfulness is therefore also not resolvable at the summary judgment stage, and both motions are denied as to this issue.  *See Heritage Lace*, 2012 WL 345904, at *4 (denying summary judgment on issue of whether defendant knew or should have known it was engaging in infringement).

## D. Remaining Issues

## 1. First Sale Doctrine

In the alternative to its positions that it did not commission or manufacture the Accused Products and that the two fabric designs are not substantially similar, Sentimental argues that it is

protected by 17 U.S.C. § 109(a), *i.e.*, the "first sale doctrine," to the extent Sentimental sold garments that were made from the very yardage of Pattern 1967 that Malibu sold to Sentimental in 2007 and 2008.  *See* Def.'s Br. at 13–14; Def.'s Rep. at 9.

Sentimental was legally entitled to resell the fabric samples it bought from Malibu.  But in "civil actions for copyright infringement, the defendant has the burden of proving that the particular pieces of the copyrighted work that he sold were lawfully made or acquired." *Microsoft Corp. v. Harmony Comps. & Elecs., Inc.*, 846 F. Supp. 208, 212 (E.D.N.Y. 1994); *see also Ranieri v. Adirondack Dev. Grp., LLC*, No. 11 Civ. 1013 (GTS), 2016 WL 796061, at *29 (N.D.N.Y. Feb. 22, 2016); *Lingo Corp. v. Topix, Inc.*, No. 01 Civ. 2863 (RMB), 2003 WL 223454, at *4 (S.D.N.Y. Jan. 31, 2003).  Here, Sentimental takes the position that there is no evidence that it *ever* sold Accused Lace.  But even if it had conceded to certain sales, Sentimental does not provide the Court any basis to infer that those sold items were made from the fabric Sentimental bought from Malibu, such as evidence demonstrating how many garments could be made from the amount of material bought, or how much Malibu fabric Sentimental owned at the time it sold Accused Dresses.  *See* Pl.'s Rep. at 10.  Sentimental's only argument on this front is that Pattern 1967 and the Accused Lace are so "strikingly similar" that, if Sentimental *did* sell Accused Lace, the "only logical conclusion" would be that the Accused Lace and Pattern 1967 were "one and the same."  Def.'s Rep. at 10.  That speculative argument alone—especially where Sentimental otherwise forcefully denies both selling Accused Lace and the substantial similarity between Pattern 1967 and Accuse Lace—would not allow a reasonable juror to conclude that Sentimental discharged its burden of proving application of the first sale doctrine.

## 2. Lack of Dates in Complaint

Because Malibu's complaint contains no specific dates of alleged infringement, Sentimental argues that the entire suit is barred by the three-year statute of limitations. *See* Def.'s Rep. at 3.

The Court rejects this argument. Discovery has created a genuine factual dispute as to whether Sentimental infringed Malibu's copyright in September 2013 by selling Accused Lace to NewYorkDress.com, and as to whether Sentimental was making Accused Lace available for sale via its website, phone, or face-to-face up through September 2015. Moreover, to the extent Malibu can convince a jury that NewYorkDress.com acquired all of the dresses it sold bearing the Sentimental tag and style number from Sentimental itself, the NYDress Invoice documents dozens of sales of those dresses that occurred within the three-year period before Malibu brought suit. *See* Steger Decl., Ex. 15. Contrary to Sentimental's argument, the original complaint's lack of specific dates does not defeat Malibu's entire suit.[25]

## 3. Lack of Statutory Notice

Finally, Sentimental argues that it is entitled to summary judgment because Malibu has failed to prove that it gave notice of copyright protection with its sales of Pattern 1967. *See* Def.'s Rep. at 3–4. But for works published after March 1, 1989, the Copyright Act no longer requires that notice be given. *See* 17 U.S.C. § 401(a) (upon publication of protected work, "a notice of copyright as provided by this section *may* be placed on publicly distributed copies….") (emphasis added); *Innovative Networks, Inc. v. Satellite Airlines Ticketing Ctrs., Inc.*, 871 F.

---

[25] Sentimental's contention that the complaint does not state a claim for relief because it lacks specific dates and fails to specifically mention Sentimental in the allegation describing infringement is similarly unavailing. Had these arguments been properly raised prior to discovery via a Rule 12(b)(6) motion, Malibu would have easily been able to amend its complaint and clarify its allegations. Since Sentimental has now gone through discovery, it cannot ignore all of the evidence in the record and simply argue that the complaint's marginal lack of specificity fails to put Sentimental on "notice" of the "grounds upon which [Malibu's complaint] rests." Def.'s Rep. at 3.

Supp. 709, 720 (S.D.N.Y. 1995) (rejecting mandatory notice argument because Copyright Act

was amended in 1988 to make notice permissive for works published after March 1, 1989).  And

in any event, there is some evidence in the record that notice was in fact given with Malibu

samples.  *See* Samuels Decl. ¶¶ 3–4 & Ex. 1.  Thus, Sentimental's statutory notice argument is

unavailing both as a matter of law and given the evidence before the Court.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment is GRANTED

with respect to copyright validity, access, and probative similarity, but it is otherwise DENIED.

Sentimental's motion for summary judgment is DENIED in full.

The Court will hold a status conference on **Friday, July 22, 2016, at 10:30 a.m**.  The

Clerk of the Court is respectfully directed to terminate the motions, Doc. 43 and Doc. 49.

It is SO ORDERED.


Dated:   June 28, 2016
         New York, New York

                                        Edgardo Ramos, U.S.D.J.

# EXHIBIT 1







# EXHIBIT 2







# EXHIBIT 3





